PHILIP M. GRAUSMAN, complainant,

v.

PORTO RICAN-AMERICAN TOBACCO COMPANY, defendant.

WILLIAM R. HOCHSTER et al., complainants,

v.

PORTO RICAN-AMERICAN TOBACCO COMPANY, defendant.

[Decided July 11th, 1923.]

1. A statute will not be held unconstitutional unless the conflict with the constitution is apparent.

2. An amendment to a certificate of incorporation providing for the issuance of additional stock of no par value. designated as "class B common stock," as distinguished from the stock having a par value existing prior to the amendment—*Held.* not to impair the contract rights of stockholders in violation of the constitution of the United States.

3. The holder of a single share of stock can bring an action to prevent an attempted *ultra vires* act of the corporation.

4. Under the statutes of New Jersey, which authorize a corporation to increase or decrease its capital stock and to create one or more classes of preferred stock, a corporation cannot, by amendment of its articles of incorporation, change existing common stock into preferred stock.

5. An amendment of the articles of incorporation authorizing an increase of the capital stock by the issuance of new no par value stock, and entitling the common stock formerly issued to a cumulative dividend at a certain per cent. before payment of a dividend on the new stock at the same per cent., and providing that both issues share equally in additional profits—*Held*, not to attempt to change existing common stock into preferred stock.

6. The right of present stockholders to have the first call upon the new stock cannot be defeated by any corrupt or other plan of the directors.

7. A resolution submitting to the stockholders the question whether the board of directors might issue new stock of the character indicated to the holders of the old stock as a stock dividend, or offer to them the right to subscribe for the same, or otherwise dispose of it according to law, does not contemplate a plan whereby the stockholders were to be deprived of their right to purchase their *pro rata* share of the new stock.

8. In a suit of a stockholder to enjoin the issue of new stock, the court will grant an application for a stay of the effect of a dissolution of an order of restraint, pending an appeal to the court of errors and appeals, where the refusal of a stay will result in the destruction of the subject-matter of the litigation, and where the appeal is manifestly taken in good faith, and there is a debatable question.

9. *Allen* v. *Francisco Sugar Co., 92 N. J. Eq. 431*, distinguished.

On bill, &c.   On rules to show cause.

*Messrs. McCarter & English,* for the complainant Philip M. Grausman.

*Mr. Merritt Lane,* for the complainants Hochster et al.

*Messrs. Lindabury, Depue & Faulks,* for the defendant.

BENTLEY, V. C.

These two cases were, by stipulation, argued together. The bill in each instance is filed by a stockholder to enjoin the defendant from holding a stockholders' meeting for the purpose of issuing additional capital stock and was heard on bill and affidavits.

The company was incorporated in 1899 for the purpose of manufacturing and selling tobacco and tobacco products, with an authorized capital stock of $5,000,000, subsequently

increased to $10,000,000, divided into one hundred thousand shares, par value $100 each, of which sixty-two thousand eight hundred and sixteen and one-half shares are now outstanding, all of which are common stock. In addition the defendant controls, through the ownership of their stock, three subsidiary corporations and is the most important Porto Rican tobacco industry and one of the largest manufacturers of cigars in the United States. It had been exceedingly prosperous until the year 1921, when, through labor troubles, it was obliged to suspend business for about nine months of that year and thereby it has been financially embarrassed. Not only has it lost money by reason of inability to use high-priced stock which it already had on hand, but during the time that it was unable to fill orders the demand for its products has fallen off, so that it now finds itself in a position where it requires $1,500,000 for the purchase of supplies, principally a stock of tobacco of the present crop, and in conducting an advertising compaign to reinstate its products in their former popularity. It is impracticable for it to borrow because of a bond issue secured by a mortgage which has exhausted its credit in that direction.

To meet this situation it was proposed to issue, share for share with the existing common stock, a new issue of stock without par value, to be sold to the Tobacco Products Corporation for the price of $25 per share, up to the number of shares of common stock then outstanding; whereupon a resolution was adopted, pursuant to the statute, to call a stockholders' meeting for that purpose, and it was provided that all of the existing stock be changed into a like number of shares of seven per cent. cumulative preferred stock of the par value of $100, which should be entitled to receive each year a cumulative seven per cent. dividend before the new or non-par stock should be permitted to participate in the profits and then the latter class of stock to receive a dividend of $7 per share per year, and thereafter each share of stock of either class should participate equally in the further profits, and that upon dissolution the preferred stock should be redeemed at par, with accumulated dividends, if any, and

that thereafter the assets remaining should be divided ratably among the holders of the non-par stock. Upon receiving notice of such intended plan, the complainants secured orders to show cause, with *ad interim* restraint, whereupon the plan was abandoned.

On May 3d, 1923, or less than two months thereafter, a new plan to finance the company was proposed by the board of directors, and this is the plan that is under consideration in these cases. A resolution was passed whereby it was recited that it was advisable to amend the certificate of incorporation of the defendant so that the present authorized capital stock of one hundred thousand shares of the par value of $100 per share, designated for convenience as "class A common stock," be supplemented by an issue of one hundred thousand shares of "class B common stock," without nominal or par value and without voting power, "which the board of directors may issue in their discretion, in whole or in part, to the holders of 'class A common stock' as a stock dividend or offer to them the right to subscribe for the same or otherwise dispose of in accordance with law." It then went on to recite that the class A stock should first be entitled to a cumulative dividend of seven per cent. and that thereafter there should next be paid out of the profits a dividend of $7 per share per annum on class B common stock and that thereafter all additional profits should be equally divided between class A stock and class B stock, share and share alike, and that upon dissolution of the corporation class A should be redeemed at par if possible and all excess, if any, be distributed ratably among the holders of both classes; and then went on to describe that in the issuing of any additional class A stock the holders of class B should have no preferential right to receive or subscribe to the same, and that in the event of any new class other than those just considered being authorized not only should the consent of two-thirds of class A be necessary, but as well two-thirds of class B.

It is then charged that such a plan is *ultra vires* and is against the objection of stockholders; that it would change

the fundamental arrangement of the corporation and violate rights of the stockholders, because the issuing of no-par-value stock was not permitted at the time of the incorporation of the defendant; that it confiscates the property rights of the stockholders in the corporation; that it is a fraud upon the state to obtain an illegal change in its stock issue, and that the officers of the corporation have secured proxies of a sufficient number of stockholders to accomplish the plan they design to effectuate.

The corporation, as has been said, was organized in 1899 or more than twenty years before the legislative authority for the issuing of stock without any stated par value. *P. L. 1920 p. 336.* The main point made by the complainants is, that under the authority of *Allen* v. *Francisco Sugar Co., 92 N. J. Eq. 431,* decided in this court by Vice-Chancellor Fielder and affirmed by the court of errors and appeals, there is no legal warrant for the issuing of such a class of stock. In that case it was proposed by the sugar company to execute a lease for "practically all its revenue-producing property" to another corporation, and the rationale of the decision was that there having been no legislative sanction therefor at the time of its incorporation it could take no advantage of a permissive act passed a short time thereafter, for the reason that it would impair the obligations of the contract into which the shareholders entered at the time of the company's incorporation. It seems clear to me that the reasoning in the *Allen Case* is not apposite to the determination of the question presented here. In all of the authorities relied upon the case of *Allen* v. *Francisco Sugar Co., supra,* both in this court and in the court of errors and appeals, there was involved the question of the right of a corporation to dispose of practically all its property without legislative sanction against the objection of one or more of its shareholders. Of course, it is clear that this would work such a change in the original agreement of the stockholders as to disturb their vested rights and require unanimous consent of every individual concerned, no matter how small his holding might be. *Kean.* v. *Johnson, 9 N. J. Eq. 401; Black*

v. *Delaware and Raritan Canal Co., 24 N. J. Eq. 455; Mills* v. *Central Railroad Co., 41 N. J. Eq. 1.*

The main question · presented here is whether or not the issue of stock without stated par value by the defendant would be such a change in the fundamental contract of the stockholders as to come within the rule expressed in those and other cases. If it would then it is clear that it would vitiate the constitution of the United States (article 1, section 10). If, on the other hand, it merely points out a different method of accomplishing the same result, by recourse to subsequent legislation, as might have been effected at the time of the incorporation of the company, no illegality will attach to the desired action.

No-par-value stock is, of course, a creature of recent origin, and no direct authority has been brought to my attention of any jurisdiction that will assist in resolving the question here under consideration. In Alabama the supreme court has recently decided the case of *Randle* v. *Winona Coal Co., 89 So. 790; 19 A. L. R. 118.* That case turned chiefly upon a comparison of the act with constitutional provisions peculiar to the State of Alabama, from which no assistance is to be had in determining the question presented in this case. It was pointed out in that opinion that although twenty-one states had adopted no-par stock legislation within a few years it is an unimportant consideration in the decision of a constitutional question. However, it needs no argument or citation of authorities to prove that there is a disinclination to disturb legislative enactments unless their conflict with the organic law is apparent. It does seem to me, however, that the needs of commerce, as evidenced by the rapid adoption of the no-par stock idea, is something that may properly be taken into account unless it is clear that it does contravene the constitution, not in some fanciful or far-fetched manner, but substantially and in real effect. The decision of the main question presented here may have · a tremendous influence upon the fortunes of innumerable investors. Such consideration, however, I am conscious, must always be subordinate

to the supreme law that is the foundation upon which our entire legal system is erected.

At the time of the defendant's incorporation the pertinent provision of the Corporation act provided as follows:

"Every corporation organized under this act may change the nature of its business, change its name, *increase its capital stock,* decrease its capital stock, *change the par value of the shares of its capital stock,* change the location of its principal office in this state, extend its corporate existence. *create one or more classes of preferred stock,* and make such other amendment, change or alteration as may be desired, in manner following:"

Thus the law stood for the purpose of this case until the enactment of the so-called no-par-value-stock act, which was a supplement to the Corporation act. *P. L. 1920 p. 336,* amended *P. L. 1921 p. 833.*

The reasoning of the complainants is that under *Allen* v. *Francisco Sugar Co.* and the other cases cited above recourse may not be had to the act of 1921, but that changes in the capitalization of the company can only be accomplished by means allowed at the time of incorporation. The change desired by the defendant does not seem to me of such a fundamental character as to make the *Allen Case* applicable. At the time this company was organized, it will have been observed, it was within the power of the statutory majority to increase its capital stock. It was also, under the act, permissible to change the par value of the shares. In substance and effect this is precisely what was contemplated at the time these bills were filed. It is to be borne in mind that, in the judgment of the directors and a vast majority of stockholders, no practical method of meeting the emergency with which they were faced was available except by an increase of its capital stock. Clearly, had it been desired the company could have reduced the value of its shares to the sum of $25 each and thereupon have increased its common stock by the issue and sale of an additional one hundred thousand shares. In the scheme under consideration the same result is to be effected by increasing the capital stock, declaring no expressed value of the shares upon the certifi-

cates of stock, and selling the same for $25 per share in the manner provided by law. In the case of *Berger* v. *U. S. Steel Corporation, 63 N. J. Eq. 809,* it will be recalled that it was proposed to retire two million shares of preferred stock and pay for the same out of bonds or the proceeds thereof, at a lower rate of interest than the cumulative dividend of the preferred stock, the particular shares to be retired being forty per cent. of the respective holdings of the preferred stockholders. This was determined by the court of errors and appeals not to be in derogation of any of the vested rights of such stockholders. Mr. Justice Van Syckel (at *p. 812*) said:

"In the presence of the fact that over ninety-nine per cent. of all the stockholders in attendance at the meeting, personally or by proxy, voted in favor of the resolution, it cannot reasonably be expected that the court is impressed with the belief that the complainant will suffer any substantial injury by the consummation of the scheme. Nevertheless, if it appears that the proposed action is without legal authority, the complainant cannot be denied the relief which she seeks, but, in passing upon this controversy, the greatest care must be observed that this overwhelming majority of the stockholders are not deprived of their rights by the very few dissentients."

And in this connection it is significant, though not controlling, that the interest of the protesting stockholders is an exceedingly small percentage. I say "not controlling" because if their contention be sound the holder of a single share has a standing to prevent the attempted *ultra vires* act of his corporation. *Chicago City Railway* v. *Allerton, 18 Wall. 233.* In the *Berger Case* the retirement of the preferred stock was justified under an act passed in 1902, or one year after the incorporation of the United States Steel Corporation. Two objections were made to this by the complainant; *first,* that the act was special, and *secondly,* that it impaired the right of the complainant, vested prior to the passage of the act. In discussing the latter question, the opinion concedes that the fifth section of the Corporation act

as it now exists (the reserve power to amend, alter or repeal charters), only applies to questions between the corporation and the state, but that the rights of stockholders, *inter sese,* cannot be so impaired except, of course, so far as impairment may be incidental to the interests of the public. It says:

"It is difficult to perceive how any substantial force can be accorded to it, unless some amendment may be made which may affect the rights of stockholders *inter sese* to some extent."

In regard to what may or may not amount to a substantial interference with private rights he says:

"It is unnecessary, however, to determine, in this case, what the true limitation upon the legislative power is; where the boundary line is which cannot be overstepped.

"Such a declaration in the case would be *obiter* and unwise. The law upon this subject, which is of great moment, is, as yet, in a formative state; a general rule upon a subject of so wide a range can be implanted in our jurisprudence only by gradual development, as questions arise for adjudication.

"Vice in a legislative act cannot safely be predicated upon the mere fact that it may not be unreasonable to apprehend that some depreciation in the value of shares may flow from it. The legislature may impose additional burdens; it may withdraw the right to engage in some remunerative branch of business, and may repeal the entire charter.

"Undoubtedly there may be changes so radical that underlying and fundamental principles will not permit the legislature to reserve to itself a right to make them.

\*       \*       \*       \*       \*       \*       \*       \*

"The act of 1896 gave the appellant the right, by a two-thirds vote of its shareholders, to retire preferred stock by purchase; the act of 1902 preserves that right, merely regulating the manner in which it should be exercised. As before stated, the complainant held her stock subject to the right of the company to retire by purchase, the shares of such stockholders as might desire to sell, and the act of 1902 in no respect alters or changes her position, except to make it more secure when the given option is refused by her. No right which vested under the Corporation act of 1896 is impaired or taken away by the later statute."

Just so in the case *sub judice*. The complainants, having in contemplation at the time of their contracts the same changes that are now to be effected in the capitalization of

the company, are in nowise injured by reason of the method pursued being different from the procedure permitted at that time.

Similarly, the other objections by the stockholders as to the effect of the change in capitalization are without substance. For example, the effect upon the dividend and distributive values of the shares and right of class B to vote as to the creation of any new class of stock might have been accomplished by a similar method that has been referred to, namely, the reduction of the par value of the existing capital stock and then the issue of an additional one hundred thousand shares.

The case of *Einstein* v. *Raritan Woolen Mills, 74 N. J. Eq. 624,* stands upon a very different footing, the defendant having been incorporated by a special act of the legislature which therein limited by express terms the capitalization to $250,-000. Subsequently, it was proposed to increase the capitalization to $525,000. Such a plan, in the face of the instrument of its birth, requires no argument to show it was a vastly different and more injurious proceeding than the increase of capitalization in the case at bar, supported by legislative sanction as there is, for the reason I have already given.

In the next place, it is urged that the resolution under discussion, if adopted by two-thirds of the stockholders, would result in changing the existing common stock into preferred stock. It is clear, from an examination of the statute already quoted, that if this be so it is a fatal defect. *Einstein* v. *Raritan Woolen Mills, supra.* So far as I know or have been able to learn no comprehensive definition has ever been attempted of "preferred stock." Counsel have cited text and cases to the effect that the adjective prefixed to "stock" means nothing, and that the question is one of contract, to be gathered from all the surrounding circumstances, such as the statute, the certificate of incorporation, the resolution of the board, &c. To assure to holders of a class of stock a certain minimum return upon their investment does not of itself, I think, so change the character of the shares as to

present the vice protested by the complainants. An attempt, under guise of such a benefit, to deprive the owners of such shares of a fundamental and vital privilege would, of course, present an insuperable objection. No such attempt is here to be observed. It is not intended to take from the holders of existing stock the right of suffrage except incidentally, as might have been done under the original statute. It is not proposed to interfere with their dividend rights, subject to the same qualification, or the distribution of the assets, or in any other way.

The remaining objection of the complainants to be dealt with is their complaint that the present stockholders are to be deprived of their right to purchase each his *pro rata* share of the new stock if and when issued. An examination of the resolution to be submitted to the stockholders, I think, disposes of this objection. It is true that in March of the present year there was proposed a similar issue of stock to the one under consideration, that was to be disposed of to an independent company known as "The Tobacco Products Company," without first being offered to the stockholders in the manner required by law. That plan, as I have already said, upon being challenged by the filing of a bill or bills by stockholders, was abandoned because the iniquity of the scheme had only to be stated to convince the directors. The resolution of May 3d, 1922, to be voted upon by the stockholders, on the other hand, provides that "the board of directors may issue, in their discretion, in whole or in part, to the holders of class A common stock as a stock dividend, or offer to them the right to subscribe for the same, or otherwise dispose of in accordance with law." So far as the first two discretionary powers are concerned, there can be no quarrel. Objection, however, is made to the clause "or otherwise dispose of in accordance with law." Of course, this entire opinion is predicated upon the disposition of the new shares as required by the rule laid down in *Wall* v. *Utah Copper Co.*, 70 N. J. Eq. 17; *Morganstern* v. *American Malting Co.*, 87 N. J. Eq. 358, and *Way* v. *American Grease Co.*, 60 N. J. Eq. 263. The right of the present stockholders to

have first call upon the new stock cannot be defeated by any corrupt or other plan of the directors. The resolution distinctly says that it must be disposed of in accordance with law, and not only is there nothing in the proofs to indicate that it will not be so disposed of, but, in addition thereto, any such attempt can be promptly and efficiently controlled. I intimated upon the argument, merely as an argument, that the complainants might say that in view of the unlawful resolution of March, a just suspicion might attach to the resolution of May; but, on the other hand, it is equally reasonable to think that the error of the company having once been pointed out to it there would be no subsequent attempt to deprive the present stockholders of the right in this connection. But be that as it may, there is nothing to warrant the belief that the directors will deliberately fly in the face of the law, and if they do, there will then be a sufficient remedy. If the new issue were beyond the power of the corporation, then it would undoubtedly be true, as complainants say, that they could not be compelled to spend one penny in protecting rights that were being illegally affected. However, in *Berger v. United States Steel Corporation* (at *p. 815*), it is said: "Equality and the equitable right of shareholders to uniform treatment is preserved by giving the like option to all." So, here, the no-par-value act of 1921 being applicable, as I have already shown, the present stockholders cannot object to the increased issue where, equally in proportion to their holdings, they are protected against any advantage being taken of them. Otherwise, any corporation finding itself in the financial emergency that faces this one could be wrecked by any individual having an interest therein, however small, to the destruction of the fortunes of all his associates and irrespective of his motives in making his attack.

I will advise an order denying the preliminary injunction sought and dissolving the existing restraint.

BENTLEY, V. C.

Upon the presentation and signing of the decrees in the foregoing cases, application was made, under the statute,

for a stay of the effect of the dissolution of the preliminary restraint and the refusal of the temporary injunction.

On behalf of the defendant, it is urged that such a course will result in the ruination of the company, for the reasons indicated in the opinion. On behalf of the complainants, it requires no urging to show that long before the relief can be obtained from the court of errors and appeals the subject-matter of the appeal will have been destroyed. The defendant, it will be remembered, says that it is driven to its present plan of procedure to raise the sum of $1,500,000 for the purposes of advertising and securing a stock of raw material for its manufacture. So far as the advertising is concerned, in view of the last statement of the corporation, it is clear that the postponing of the campaign for two months will not be destructive of the defendant's fortunes, although it may result in some inconvenience and will undoubtedly delay to some extent the complete rehabilitation of its business. So far as the other purpose, namely, the purchase of supplies, is concerned, it seems incredible that a corporation of the standing of this will be unable to secure raw tobacco to be made up into articles of commerce. This company, as has been said, has a practical monopoly upon the tobacco industry, and I am at a loss to see how in a comparatively short time any competitor can gain such a footing in opposition to it as will result in its being bankrupt for such material.

With these considerations in view, and the policy of our jurisprudence in favor of review of legal questions, it seems to me that my duty is plain.

"So, also, where there would be danger of irreparable mischief. In cases of injunction, for instance, and, still more, of orders dissolving injunctions, an appeal ought always to be permitted to stay execution." *2 Dan. Ch. Pl. & Pr. (6th Am. ed.) 1468;* citing *Wood* v. *Griffith, 19 Ves. 550; Way* v. *Foy, 18 Ves. 452; Hyam* v. *Terry, 29 W. R. 32; Jewett* v. *Dringer, 29 N. J. Eq. 199.*

The rule of discretion in these matters is to determine whether or not the refusal of a stay will operate to defeat the object of the appeal. *Jewett* v. *Dringer, supra; Pennsylva-*

*nia Railroad Co.* v. *National Docks Railroad Co., 54 N. J. Eq. 647; Delaware, Lackawanna and Western Railroad Co.* v. *Breckenridge, 55 N. J. Eq. 159; Ashby* v. *Yetter, 78 N. J. Eq. 173; Cape May, &c.,* v. *Cape May, &c., 82 N. J. Eq. 204; Robinson* v. *Robinson, 86 N. J. Eq. 165.* For the reasons I have already mentioned, I conceive that if the court of errors and appeals should determine that I have fallen into error, the damage to the complainants will have been irreparable indeed.

Another consideration brought to my attention by counsel is the fact upon which I have already commented, namely, that this is a case of first impression and one of great importance not only to the parties but to the public. It is apparent that an appeal by the complainants would present to the appellate court a mere academic question. Therefore, a stay should be granted so that the question presented may be once and for all determined.

I am also inclined to this course by reasoning similar to that upon which it is well settled, that a temporary injunction should not be granted when the right of the complainant depends upon an unsettled question of law. *Citizens Coach Co.* v. *Camden Horse Railroad, 29 N. J. Eq. 299; Kearny* v. *Bayonne, 92 N. J. Eq. 627.*

While the solution of the question in this case appeared so clear to me as to present no difficulty, yet I am disinclined to refuse sincere and experienced counsel an opportunity to review me when so earnestly besought. Therefore, as a matter of policy, I feel that the application to my discretion compels me to stay the effect of the decrees herein pending the application to the court of errors and appeals at the first available opportunity, which I am informed will be in the first week of September.