RICHARD T. DANA, administrator of RICHARD S. DANA, deceased,

*v.*

THE AMERICAN TOBACCO COMPANY and THE MORTON TRUST COMPANY et al.

[Decided January 8tn, 1907.]

1. Where complainant acquired certain corporate stock as administrator of his father, who died in 1904, it was complainant's duty either to have the stock transferred on the books of the company or to give distinct notice that subsequent notices of meetings sent to him as a stockholder should be sent to a certain address, in order to charge the corporation with neglect in continuing to send notices to the address of his father as the registered holder of the stock.

2. Complainant acquired certain stock in defendant company as administrator of his father's estate, but took no steps to have the stock transferred until after his return from Europe, when he learned that proceedings were in progress for the consolidation of the corporation with

certain other corporations. Complainant waited some eight weeks before he employed local counsel to attack the merger, during which time the new corporation's stockholders' "rights certificates" and corporate bonds had been issued.—*Held,* that the complainant was not entitled to the relief prayed for, which consisted in the actual separation of the original assets of the corporation whose stock was held by complainant, and the resuscitation of the corporation and its being compelled by a decree of this court to proceed to conduct the business provided for in its articles of association.

On final hearing on bill, answer and proofs.

*Mr. James E. Howell* and *Mr. Grosvenor Nicholas,* of New York, for the complainant.

*Mr. Charles L. Corbin* and *Mr. Richard V. Lindabury,* for the American Tobacco Company and the individual defendants.

*Mr. Robert H. McCarter,* attorney-general, and *Mr. Bronson Winthrop,* of New York, for the Morton Trust Company.

PITNEY, V. C.

This bill is almost identical in frame and prayer with that of *Beling* v. *American Tobacco Company,* just decided.

The certificate of preferred stock held by the complainant was issued to his intestate in 1892 and the intestate died in 1904. The stock was never transferred.

The prayer of the bill, though varying somewhat in verbiage from that in the *Beling Case,* is in substance the same. It prays that the merger agreement and the merger itself, in all its aspects, may be held to be void as against the complainant; that the lien of the mortgage made by the new company to the Morton Trust Company may be removed from the property of the American Tobacco Company and be declared null and void as a lien thereon, so far as regards the rights of the complainant; that there may be an ascertainment of the specific items of real and personal estate and other assets owned by the original company at the time of the merger, and that the same may be separated from the property of the merged corporation and be redelivered to the officers and directors of the American Tobacco Company;

that there may be an ascertainment of the loss by reason of the merger, and that the stockholders of the original company who are made parties to the bill may be made liable therefor and charged therewith by the decree of this court, and that the court will issue a mandatory injunction to compel performance of its decree, and that the merged corporation may account for all the profits, income, properties and moneys derived by it from the assets of the original corporation, and for other relief.

The defendants' answer is much the same as the answer to the Beling bill.

At the hearing a large amount of evidence was taken verifying in detail the allegations of the answer, which were admitted by the complainant in the *Beling Case.*

It was further proven that most of the few stockholders who had voted against the merger agreement had come in and accepted the terms of that agreement.

With regard to the attitude of the complainant and his conduct, the case differs from that of Beling. The complainant's father died in January, 1904, and complainant took out letters of administration, and about the 1st of June complainant wrote a letter to the company stating that he was about to leave for Europe, to be gone during the summer, and wished his dividends put to his credit in a bank which he named. This letter at its head stated his business address at an office which he occupied in New York City. But the complainant did not have his stock transferred to his name. It consisted of two certificates of $5,000 each, and he contented himself with handing over one of those certificates to his brother, who was, besides his mother, the sole next of kin.

No entry having been made upon the stock ledger of this change of ownership and address, the notice of the meeting and the copy of the contract of merger were sent to the residential address of his late father in New York City, which, at the time, September 9th, that they were sent, was in the hands of a caretaker. The widow, who was also a stockholder, and who resided there, was, at that time, still stopping at her country place in the Berkshires.

Affirmative proof was given tending to show that for some

unexplained reason neither the notice to the complainant's intestate nor to his widow was ever actually received.

The complainant returned from Europe on the evening of October 5th, entirely ignorant of what had taken place in his absence, but after attending to his own private affairs and business, which occupied a few weeks, he seems to have bethought himself of his dividends on the tobacco stock, and applied to the Farmers' Loan and Trust Company, the transfer agent, on or about the 10th day of November, and then and there learned that the company was no longer in existence, and very shortly— two or three days afterwards—received copies of the merger agreement which contained all the particulars. He had, however, some fews days or weeks before that, heard indefinite rumors of some change in the organization or management of the company. He immediately consulted his New York counsel and with him alone undertook to study the situation and his rights. He also interviewed counsel of the tobacco company and correspondence ensued running over into January, 1905, and early in that month he served a written protest on the company, which was the first that he had made a definite declaration of his position.

In the meantime the transactions provided for in the agreement of merger had been carried through by the surrender of the original certificates of stock and bonds and the issuing in place thereof, as usual in such cases, temporary negotiable certificates to be delivered to the trustees when the permanent securities had been engraved, prepared and signed to be exchanged therefor. The complainant's protest reached the company before the actual exchange for temporary certificates for permanent securities had taken place, but in the meantime those temporary certificates had become an article of mercantile dealing.

Now, under these circumstances, each party charges the other with negligence and laches. The defendants charge the complainant with laches in not having the certificate of stock formally transferred to him, and giving his address to be entered on the stock ledger, and next in that, upon receipt of a copy of the merger agreement and being informed, as he was, that the merger had been or was being consummated, and

being aware, as he must have been, that changes were daily taking place in the situation, both of the business conditions of the new company and in the ownership of the securities issued by it, he did not immediately take advice of counsel learned in New Jersey law as to his rights and remedies thereon.

On the other hand, the complainant complains that the defendants ought, on the receipt of his letter asking them to have his dividends put to his credit in the bank, to have made such memorandum of it as would have resulted in the notice of the meeting of September 30th being sent to his business address, in which case he claims it would have reached him at that address in New York City.

The defendants' reply to that is that that letter referred wholly to dividends and did not at all call their attention to his business address but to the address of his bank, the former appearing only in print at the head of the letter, and hence that it was misleading. I find by examining the correspondence that it does seem to have misled them; and they farther claim that the regular course of business and the terms of the statute require them to send the notice to the party in whose name the stock stands on the books of the corporation, and that they were not justified or required to change the address upon an implied notice of that sort.

I am inclined to think that the defendants' position is sound, and that the complainant's duty was either to have the stock transferred on the books of the company or to have given them distinct notice that any notice sent to him as a stockholder should be sent to a certain address. But the evidence leaves me in doubt whether he would have received the notice under any circumstances. The only effect of his receiving it on his return from Europe would have been to enable him to have filed a bill in this court to restrain the merger before it was consummated as it was on October 20th by the filing of the dissolution papers in the office of the secretary of state.

The positive negligence with which I think the complainant is chargeable consisted in his failure immediately to employ New Jersey counsel, and to make a prompt decision and take prompt action thereon. By failing in that respect, and occupying some

eight weeks or so in determining what ground and course he would take, he undoubtedly seriously increased the difficulties in the way of granting the relief here asked for. For not only were the temporary securities issued by the company dealt in on the market in the meantime, but the mercantile subjects of its business were being changed and the difficulty of a separation were increasing daily.

The present case is not so strong against the complainant in the matter of acquiescence and laches as was found in the *Beling Case*. But while I find that fact I am still of the opinion that it is a case in which relief as prayed for should not be granted. The injury and disturbance to business affairs is too great and serious as compared to the benefit to be derived therefrom by the complainant to justify that extraordinary remedy.

I have said the complainant prayed for specific performance of a contract. I will add that the decree prayed for much resembles a decree for the specific performance of a continuing contract. Complainant asks for a mandatory injunction to compel the officers and directors of the extinct tobacco company to resume their functions, to take charge of the property of the old company, and, as I understand the scope of the prayer, to carry on that company's business until the year 1940, unless sooner dissolved. That is a sort of function that this court is very cautious about undertaking, and I am unable to bring my mind to adjudge that it ought to do it in this case.

I will advise the same decree in this case as that proposed in the *Beling Case*.

The defendants, by their answer, allege that the complainant never applied to the tobacco company to waive the bar of the statute to the appointment of appraisers to ascertain the value of his stock, under the provisions of those sections of the Corporation act which provide for dissolution, and declare that the company in fact has been willing and is now willing to consent to such an appraisement, notwithstanding the expiration of the statutory period of thirty days.

The tobacco company, defendant, by its answer, also offered to pay complainant the market value of his stock at the time of the consolidation, or to pay him the present worth of said stock

and of all dividends that could possibly be earned thereon until the expiration of its charter, or to pay complainant such a sum of money as may be ascertained by this court in this proceeding to represent the proportionate share of the assets of the original American Tobacco Company, to which the complainant would be entitled as the owner of its preferred stock, mentioned in the bill, if the company were dissolved and its assets liquidated under and in accordance with the statute. And it submitted itself to the jurisdiction of the court in this behalf and consented to the entry of a decree against it in favor of the complainant, upon any one of the offers just mentioned which the complainant may elect to accept.

If the complainant shall decline to accept any one of these offers I shall advise a decree that his bill be dismissed, without costs.