AMERICAN MALT CORPORATION AND AMERICAN MALT-ING COMPANY, APPELLANTS, v. BOARD OF PUBLIC UTILITY COMMISSIONERS ET AL., RESPONDENTS.

Argued June 26, 1914—Decided November 16, 1914.

On appeal from the Supreme Court.

A majority of the directors of the American Malt Cor-poration and of the American Malting Company, corpora-tions organized under the General Corporation act of this state, entered into an agreement of merger and consolidation, providing for the merger of the American Malting Company into the American Malt Corporation.

This agreement was approved at special meetings of stock-holders, by the holders of more than two-thirds of the stock of each of the corporations.

· Thereafter application was made to. the board of public utility commissioners under chapter 19 of the laws of 1913, for approval of the proposed merger. The board, after hear-ing, determined that it could not approve the merger and consolidation in the form proposed and the application was therefore denied and the petition dismissed. A *certiorari* to review and set aside the proceedings of the board was sued

out of the Supreme Court, and that court, Mr. Justice Swayze sitting, sustained the action of the board in the following *per curiam:*

"In order to expedite the proposed appeal, I will indicate succinctly the views I hold. The case was argued as if it involved the constitutionality of chapter 19 of the laws of 1913, which requires that corporations intending to merge shall first secure the approval in writing of the board of public utility commissioners. It is said that this involves a delegation of legislative power. No statute is pointed to which becomes a law or ceases to be a law as the result of any act of the commissioners. There is none. It seems to be thought that the commissioners would legislate if they adopted any rules for their own guidance in granting or withholding their approval of a proposed merger of corporations, but such rules would have no binding force even upon the commissioners themselves, since they could rescind them at pleasure; they lack all semblance of legislation and surely could not render unconstitutional an act of the legislature. The requirement of approval by the commissioners is no more than the requirement that some judicial or clerical officer shall pass upon the regularity of incorporation papers, or the requirement of the act of the secretary of state in *Iowa Life Insurance Co.* v. *Eastern Mutual Life Insurance Co.,* 64 *N. J. L.* 340, or the requirement of certificates from the commissioner of banks and insurance under our present statutes. If it were necessary to sustain the constitutionality of the act, it would be quite natural to hold that the intent of the legislature was no more than to require an ascertainment by the commissioners of the fact that the proposed merger was of a character authorized by law. It is not, however, necessary to go so far as to limit in this way the powers of the commissioners. The real question is whether the legislature itself had the right to impose as a condition of merger the approval of the commissioners. To state the question is to answer it. The right to merge is purely statutory and there is no constitutional objection to the legislature fixing such

670    COURT OF ERRORS AND APPEALS.

Amer. Malt. Co. v. Bd. Pub. Utility Com'rs.    *86 N. J. L.*

terms as it chooses, including, since that is its pleasure, the written consent of the commissioners. The legislature is under no compulsion to authorize a merger, and it may impose even fanciful conditions; it might, for instance, prescribe that the approval should be written in red ink. This power of the legislature is not lessened by the fact that section 109, as originally enacted, antedates chapter 19 of the laws of 1913, nor by the fact that chapter 17 of the laws of 1913, amending section 109, is contemporaneous with chapter 19, requiring the approval of the commissioners.

"It so happens that the provisions are in distinct acts, but one is an amendment of, and the other a supplement to, the Corporation act; they must be read together as part of the same enactment with the section authorizing a merger. It is as if section 104 (*Comp. Stat., p.* 1659) read: 'Upon obtaining the written approval of the public utility commissioners, any two or more corporations may merge or consolidate.' No doubt the action of the board must be reasonable and not arbitrary, but that is because we will not attribute to the legislature an intent to exercise or permit the exercise of arbitrary power. The action of the commissioners must have a foundation in reason; it has such foundation when it is based upon the requirements of the Corporation act, or upon settled legal principles, and not upon the mere whim of the commissioners.

"I doubt myself the view of the board that the two corporations concerned were not such as could properly merge. The only difference between the kinds of business authorized to be carried on is that the malt corporation is authorized by its charter to buy the stock of the malting company. The merger act does not require that the corporations to be merged carry on the same kind of business; it is enough that the business is of similar nature. How the mere added power to acquire stock can make the two kinds of business dissimilar, I do not see. It is not the business in fact carried on but the business for which the two are organized that determines, under section 104, the right to merge. It

was not the fact that one corporation was a holding company that condemned the merger in *Colgate* v. *United States Leather Co.,* 75 *N. J. Eq.* 229. But even this difference between the malting company and the malt corporation is apparent rather than real; since section 59 (*Comp. Stat., p.* 1630) authorized any corporation organized under the act to purchase stock of other companies, and the legislature not only re-enacted this in 1913 (chapter 15) but by express provision recognized the right of one corporation to buy stock of another corporation owning property 'cognate in character and use to the property used or contemplated to be used by the purchasing corporation.' The expression seems to me broader than that contained in section 104, for corporations may be dissimilar in the kind of business they are organized to carry on, and may yet own property cognate in character and use to that used by the purchasing corporation, and *a fortiori* to that contemplated to be used. With this broad provision in the act of 1913, the malting company had by statute law the same powers as, perhaps more extensive than, the malt corporation had by its certificate of organization. It is no answer to say that the malting company could not vote on its own stock; neither could the malt corporation; but each could acquire and vote on the stock of the other. Nor is it an answer to say that in fact the malt corporation was only a holding company; the property contemplated to be used by it was the identical property actually owned and used by the malting company; in fact one object of the merger was to do away with the holding company. If the action of the commissioners rested alone on the ground that the business was not similar under the act of 1896, or cognate in character under the act of 1913, I should have difficulty in sustaining it.

"I think it may safely be sustained on two grounds—*first,* that the scheme of merger involves the issue of stock for less than its par value; *second,* it is unfair to the preferred stockholders of the malting company.

"*First.* Although the malt corporation owns most of the

672    COURT OF ERRORS AND APPEALS.

Amer. Malt. Co. v. Bd. Pub. Utility Com'rs.    *86 N. J. L.*

stock of the malting company, and as to that no material change is proposed, it will nevertheless be necessary to issue some stock of the malt corporation for some stock of the malting company, which is worth less than the par value of the stock proposed to be issued therefor. I am not impressed by the argument drawn from the broad language of section 109. If that argument is to be pressed to its logical result, the merging corporations may determine for themselves how much stock they will issue and how small a payment they will accept therefor; two corporations may accomplish therefore by merger what neither could do alone and issue stock for property worth less than its par value. It needs no argument to show that the necessary result would be to do away with the provisions of the act requiring money or money's worth. Such cannot have been the legislative intent. I think section 109 must be read in connection with the rest of the act and that money or money's worth is required for stock issued upon a merger as well as in other cases.

"*Second.* I am persuaded also that the proposed merger is unfair to the preferred stockholders of the malting company for the reasons stated in Mr. Ordway's brief. It is said that the objection on this score is the proper subject for action by the court of chancery, and that equity powers cannot be conferred upon the commissioners. I do not regard the case as one where judicial power is conferred upon an administrative body. The legislature has seen fit to require the approval of the commissioners as a condition precedent to a merger. I see no reason why their refusal to approve may not properly be based upon the fact that the scheme is such that, upon recourse to a proper tribunal, it would be enjoined. Surely it is not for this court to say that their refusal to approve in such a case should be set aside. Their approval would not prevent action by the Court of Chancery. In short the action of the commissioners is no adjudication of the right of the parties, but a mere step in administrative procedure which is subject to control by the courts.

"The result is an affirmance of the order, with costs."

For the appellant, *Lindabury, Depue & Faulks.*

For the respondent, *Frank H. Sommer.*

*Pro se, Samuel H. Ordway.*

PER CURIAM.

Our examination of this case has led us to the conclusion that it was rightly decided in the court below.

We do not, however, wish to be understood that had we differed from the Supreme Court and reached the conclusion that the board of public utility commissioners had not exercised a sound but an arbitrary and unreasonable discretion in disapproving of the merger of these corporations, that our decision would be different. .The question, whether or not the Supreme Court has the power to review and reverse the determination of such board in the matter of approving or disapproving the merger of corporations under chapter 19 of the laws of 1913, not having been raised or argued, is not decided.

The judgment of the court below will be affirmed, for the reasons stated in its *per curiam,* except as to the observation to the effect that the action of the board in these matters must be reasonable and not arbitrary. Upon that question we express no opinion.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, BOGERT, VREDENBURGH, HEPPENHEIMER, WILLIAMS, JJ. 13.

*For reversal*—None.