EDWIN LOOMIS et al., complainants-respondents,

*v.*

PUBLIC SERVICE TRANSPORTATION COMPANY et al., defendants-appellants.

[Argued October 28th, 1927.   Decided February 6th, 1928.]

1. Complainants, members of a voluntary unincorporated association, were instrumental in forming under the General Corporation act of this state two corporations to which title of property belonging to the association was conveyed and capital stock issued therefor. In a bill filed to declare the property so conveyed to be held in trust for the association and to enjoin the said corporations and others from using the same the complainants alleged that said corporations were to be a name merely for the convenience of holding the common property of said association. *Held,* that a court of equity would not countenance such a fraud upon the Corporation act and extend aid to those who had participated in it.

2. Where the facts constituting the claim of complainants are controverted or disproved by the answer and/or the answering affidavits a preliminary injunction will not as a general rule be granted.

On appeal from an order of the court of chancery.

*Mr. Frank Bergen* and *Mr. William H. Speer,* for the appellants.

*Mr. Nicholas S. Schloeder* and *Mr. Isaac Gross,* for the respondents.

The opinion of the court was delivered by

KATZENBACH, J.

This is an appeal from an order of the court of chancery granting a preliminary injunction. To understand the legal questions involved in the appeal requires a statement of the events leading up to the filing of the bill of complaint. When

the auto bus came into competition with the street railways, operators of buses in Hudson and Bergen counties laid out a bus route commencing at the Fourteenth street ferry, in the city of Hoboken, and running northward up the hill to Grantwood, in the county of Bergen. This route competed with a 'line of street railway of the Public Service Railway Company. The number of persons desiring transportation over this route was large. The number of independent bus owners traversing this route grew in number. They competed among themselves and with the street railway for the traffic. The bus owners believed that their interests would be better served if they could get together. They formed a voluntary unincorporated association called the Hillside Bus Owners Association. The association had officers and by-laws. It kept minutes of its meetings. All receipts from the operation of the buses of its members were pooled. Each bus owner drew from $38 to $40 per day from the association according to the kind of bus he owned. The surplus was permitted to accumulate against deficit of earnings by individuals. A part of the funds were used to purchase what were called "replacement buses." If a member's bus became damaged or needed to be repaired a replacement bus would be given to the member to operate while his bus was being repaired. The agreement between the members was that if any member should withdraw or sell his bus and permit he would by such action forfeit all his interest in the common property.

It was deemed advisable to lease a terminal near the Hoboken ferry for the buses and to purchase a parcel of real estate for use as a northern terminal. Those in control of the association thought it was expedient that the legal title to the terminals and to the replacement buses should be vested in some corporation or corporations. There were legal and practical objections to the taking of title in the names of individuals connected with the association. Counsel for the association advised the formation of two corporations. This was done. The corporations were formed under the General Corporation act of the state for the purpose of holding the legal title of the property conveyed to them. The name of one corporation was the Berkeley Bus Company. This com-

pany took title to the replacement buses and the lease to the
Hoboken terminal property. The name of the other corpora-
tion was the Lafayette Realty Company, which took title to
the northern terminal. The certificates of incorporation are
not embodied in the state of the case. The bill of complaint
says that the "property [meaning the property conveyed to
said corporations] nevertheless was to be held in trust for the
Hillside Bus Owners Association and its members and in
pursuance to the purposes for which said association was or-
ganized as above set forth." There is nothing in the record
to show that such purpose was stated in the certificates of in-
corporation. The bill of complaint says as to each incorpora-
tion, "said corporation was to be a name merely for the con-
venience of holding common property of said association."
The bill of complaint is silent as to who were the stock-
holders in the two corporations. No certificates were pro-
duced by complainants or defendants. From the affidavits
it appeared that there were twenty-nine members of the as-
sociation when the two corporations were formed. The stock
was issued in multiples of twenty-nine. It was issued for the
property purchased and was to be issued to the vendor or his
nominees. This appears to have been done. The vendor
nominated the twenty-nine members of the association who
received certificates of stock. The Berkeley Bus Company
sublet to each of the twenty-nine individuals terminal privi-
leges at the Hoboken ferry terminal at a price sufficient to
pay the rental. Each member secured this payment for rental
by giving a chattel mortgage on his bus. This transaction
took place in 1925. During this period the agreement among
the members of the association was that membership ceased
on the sale of a bus and the purchaser would have to be ad-
mitted to membership by act of the other members.

On October 11th, 1926, the bill states that the by-laws of
the association were amended and an agreement in writing
was executed by all the members providing that no member
should sell or dispose of his bus or permit, and if he did so
he would cease to be a member of the association and would
forfeit all his rights in the property of the association, and
would be required to pay to the association $5,000 as liquidated

damages because of his withdrawal of an earning asset from the service of the association. The bill alleges that three of the defendants, Public Service Transportation Company, Berkeley Bus Company and Lafayette Realty Company had due notice of this agreement. This recital has been preliminary to the gravaman of the complaint which is that on or about November 1st, 1926, thirteen members of the association sold to the Public Service Transportation Company their buses and permits and thereby forfeited all rights not only in the funds of the association standing in its name, but in the property owned by the Berkeley Bus Company and the Lafayette Realty Company held in trust for the members of the Hillside Bus Owners Association. The bill recites that these corporations and the Public Service Transportation Company have appropriated two replacement buses, the corporate books and records, the agreement of October 11th, 1926, and the funds of the association; that the Berkeley Bus Company has canceled eleven of the thirteen subleases, and the chattel mortgages and the ferry terminal in Hoboken would likely be lost (at the argument it was stated that the landlord had dispossessed the tenant).

The bill was filed by ten members of the association. The defendants were the three corporations hereinbefore mentioned and fourteen individuals who are principally those who sold their buses and permits on or about November 1st, 1926, to the Public Service Transportation Company. The allegations of the bill are supported by affidavits. The charges made in the bill are met by answering affidavits. The order for a preliminary injunction is broad and embraces substantially every injunctive relief prayed for in the bill. It is unnecessary to state specifically its contents. The theory of the bill is that the property conveyed to the Berkeley Bus Company and the Lafayette Realty Company was conveyed without consideration by or through the Hillside Bus Owners Association upon an agreement that the corporations to which the property was conveyed were to hold it in trust for the said association.

In our view of the question as to whether the complainants were entitled to the order for temporary injunction granted,

it is unnecessary to consider whether the theory of the complainants' bill is supported by their affidavits or overthrown by the counter affidavits of the defendants. The complainants allege that the said Berkeley Bus Company and Lafayette Realty Company were formed to be merely names or figureheads for the convenience of holding the title of the common property of the Hillside Bus Owners Association. The complainants were instrumental in the formation of said corporations under our act of incorporation. While the certificates of incorporation, as has been stated, are not set forth in the record, yet we can gather from what is stated and what was done that the certificates stated purposes entirely different from those now alleged in this proceeding. The corporations ostensibly purchased property and issued shares of stock for it, which shares presumably passed into the hands of the members of the said association. Now, the complainants come forward and say that this was all a sham and fraud, and that the corporations which they were instrumental in forming never had anything but a naked title to the property which was conveyed to them and that the property so conveyed belonged in equity to others. Equity will not countenance such a fraud upon the Corporation act and extend to those who participated in the fraud its aid. Those who ask for relief in a court of equity must come into court with clean hands. *Prindiville* v. *Johnson and Higgins, 93 N. J. Eq. 425; Jackson* v. *Hooper, 76 N. J. Eq. 592.* Upon this ground the order appealed from will be reversed.

There is, however, one other ground of appeal pressed by the appellant which we think should be considered, as the question is discussed in the opinion of the learned vice-chancellor who granted the order. The court of chancery will not as a general rule grant a preliminary injunction when the equity of the complainant is controverted or disproved by the answer and affidavits. This principle has best been stated by Chief-Justice Beasley in the case of *Citizens Coach Co.* v. *Camden Horse Railroad Co., 29 N. J. Eq. 299,* in these words:

"The general rule, subject to but a few exceptions, is, that if the facts constituting the claim of the complainant for the

immediate interposition of the court are controverted, under oath, by the defendant, the court will not interfere at the initial stage of the cause."

In the present case the claim that the three defendant companies had notice that the property conveyed to the two corporations organized by the said association was held in trust for the owners of the association was denied by the affidavits of the defendants. The answering affidavits further denied every material allegation upon which the complainants' bill rested. We see no special circumstances in the proofs which in our opinion call for a departure from this rule. It was, therefore, error to have granted the order for preliminary injunction.

The order appealed from is reversed, with costs.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Trenchard, Parker, Minturn, Kalisch, Black, Katzenbach, Campbell, Lloyd, White, Van Buskirk, McGlennon, Kays, Hetfield, Dear, JJ.  15.