730

KNIGHTS OF THE KU KLUX KLAN, Inc.,
v. MONMOUTH PLEASURE CLUB
ASS'N, Inc., et al.

Circuit Court of Appeals, Third Circuit.
September 19, 1929.

No. 3886.

W. F. Zumbrunn, John H. Connaughton, and Ben H. Sullivan, all of Washington, D. C., for appellant.

Wm. L. Edwards, of Long Branch, N. J., for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal from a decree of the District Court dismissing the bill of complaint.

The plaintiff, the Knights of the Ku Klux Klan, Inc., is a corporation organized and existing under the laws of Georgia and is without capital stock. The defendant the Monmouth Pleasure Club Association, Inc., is a corporation of the state of New Jersey.

The plaintiff alleges that it is a benevolent, religious, and charitable institution, not organized for profit, but authorized to confer an initiative degree and promulgate secret obligations, words, grips, and signs, and to organize local or subordinate klans or lodges throughout the United States; that pursuant to this authority, it organized in the state of New Jersey local or subordinate klans or lodges, among which are the Asbury Park Klan No. 7 and the Point Pleasant Klan No. 9; that the Monmouth Pleasure Club was organized on or about June 30, 1923, by the membership of the Asbury Park Klan for the purpose of securing certain real estate; that the stock of the corporation was paid for by the members of this and other kindred klan organizations in New Jersey, upon the agreement and understanding that the money thus realized from the sale of the stock of the defendant company would be used to purchase real estate for a klan home and place of meeting of the "Asbury Park Klan No. 7, the Point Pleasant Klan No. 9 and other kindred organizations, among which was Molly Pitcher Klan No. 2, Women of the Ku Klux Klan No. 3, Women of the Ku Klux Klan, American Krusaders of Asbury Park"; that the property was purchased with the money thus raised and other money donated by the Asbury Park and Point Pleasant Klans under this express agreement, understanding, and representation (though the first property purchased was near Sea Girt and after it was used for a while it was sold and the proceeds of the sale, together with other money realized from the further sale of the stock to klansmen, were used to purchase the property of the defendant company which is in question here); that klansmen and their families have contributed in personal services, which has largely enhanced its value, with the understanding that the Asbury Park and Point Pleasant Klans were the legal owners of the property, though the title was held by the defendant, but in trust for the use and benefit of the klan organizations represented in the purchase of the stock, and that the defendant is the trustee of a naked trust, and

that the Asbury Park Klan, the Point Pleasant Klan, and other affiliated and related klan organizations are the legal owners of the property in question; that defendant claims to be the legal and equitable owner of the property and is threatening to sell it; that the charter of the Point Pleasant Klan has been revoked, and the plaintiff under its constitution and by-laws succeeded to all the rights, powers, and privileges and is the owner of the interest of the Point Pleasant Klan in and to the property; that the plaintiff under its constitution and by-laws has a trust interest and inchoate estate in all property owned by and under the control of any local lodge or klan working under its jurisdiction; and that if the charter of any local klan is revoked, all of its property automatically and immediately becomes the actual property of the plaintiff corporation, and that it is the equitable owner of the property in controversy.

It prayed that the court appoint a receiver to take charge of the property, hold it in statu quo until the termination of the suit, enjoin the defendant from disturbing the plaintiff and klans in the possession and use of the property and from prosecuting any suit concerning the subject-matter of this suit, and that upon final hearing the defendant be decreed to be the trustee of a naked trust and the plaintiff the absolute legal and equitable owner of the property; that in the event the court should hold that the plaintiff is not the legal and equitable owner of the property, it determine its interest therein and decree that plaintiff have the perpetual use and possession of it as a meeting place.

The defendant alleges that neither the plaintiff nor the subordinate klans have complied with the act of the Legislature of New Jersey entitled "An Act to incorporate associations not for pecuniary profit" (1 Comp. St. N. J. 1910, p. 125), in that they have not signed nor caused to be signed and acknowledged before a person authorized to take acknowledgments and proof of deeds in New Jersey and filed in the office of the secretary of state of New Jersey, and recorded in the office of the clerk of the county of Monmouth or Ocean in which the, klans are located, a certificate in writing giving the name or title by which the corporation is to be known in law, the purpose for which it is formed, the place where it is to be located or its business conducted, the number of trustees and the names of those selected for the first year; nor have they paid to the clerk or secretary of state the fees required by the act; that the defendant was incorporated only for the purposes set forth in its certificate of incorporation as follows:

"The objects for which this corporation is formed are to provide legitimate pleasure and amusement, within the laws of the State of New Jersey and the United States of America, to purchase, take or lease, or in exchange hire or otherwise acquire, any real and personal property, and any rights or privileges, which the company may think necessary or convenient for the purposes of its business; to sell, let or transfer any real or personal property or rights and privileges, as the company may think necessary or convenient for the purposes of its business.

"Generally, to do any and everything necessary, convenient or proper for the accomplishment of any purpose or object herein enumerated, or the accomplishment of any purpose or object arising incidentally to the purposes herein mentioned, or which at any time desirable or proper for the protection or the best interest of the corporation, either as holders of or interested in any property or otherwise, with all the powers now or which may hereafter be conferred by the laws of the State of New Jersey, upon Corporations under the Act herein referred to.

"The corporation shall also have power to conduct its business in all its branches, have one or more offices, and to hold, purchase, mortgage and convey real and personal property outside of the State of New Jersey, and in all other States, and in all foreign countries and especially in Monmouth County, New Jersey."

The defendant further alleges that the stock was subscribed and paid for with no express agreement, understanding, or representation that the funds secured thereby would be used for the purpose of a klan home; that while some of the local klans have used the property as their home and meeting place, they have paid rent monthly as tenants and have always recognized the defendant as their landlord; that the stock of the defendant company was purchased by various klansmen, but with no express agreement or understanding that the property in question was to be used for the sole purpose and use of the klan as a meeting place, or that the klan or local kindred organizations were to be the owners of the property; that no local klan contributed to the purchase of the property, except that the Point Pleasant Klan subscribed for 50 shares of stock on March 30, 1925, and that on or about May 20, 1926, that stock was transferred to the Point Pleasant Pleasure Club Association, which is in no way connected with the plaintiff; that the

defendant has sold parcels of its property to various purchasers, but without consulting the plaintiff or any local klan; that the value of the property in question is more than $1,-000,000, and its debts less than $100,000; that the defendant with the knowledge of its stockholders purchased the property in question, consisting of about 400 acres with large buildings and private homes thereon for speculative purposes; that it has sold about 700 lots to its stockholders and others; that neither the plaintiff nor any subordinate klan has any writing signed by any of the defendants who are by law enabled to declare a trust; and the contentions of the plaintiff are contrary to the third section of the Act of New Jersey entitled "An Act for the prevention of frauds and perjuries" (2 Comp. St. N. J. 1910, pp. 2610, 2611). It therefore prayed that the bill be dismissed.

The motions for the appointment of a receiver and preliminary injunction came on for hearing and the defendants requested a continuance. It was ordered that the matter embraced in the proceedings remain in statu quo as of the time of the filing of the bill. At the adjourned hearing on bill and answer, the court dismissed the bill on the ground that the plaintiff, the Knights of the Ku Klux Klan of Georgia, had not contributed anything towards the purchase of the property nor the organization of the corporate defendant, and that it could not strip the corporate defendant of its assets in favor of a corporation which has no property rights in its assets or in its stock arising from agreement, express or implied, supported by a valid consideration.

The appellant says that the court erred in dismissing the bill without a motion to dismiss having been filed by the defendants. That is, the court could not of his own motion dismiss the bill under the facts of this case.

There are certain conditions under which the court may do so on its own motion. Admittedly it may do so when the pleadings and all the facts before the court show that it is without jurisdiction, but there is no contention here that the court did not have jurisdiction. A court may dismiss a bill on its own motion also because it fails to state a cause of action or allege facts, when taken as true, which entitle the plaintiff to relief. Fougers v. Jones (C. C.) 66 F. 316; In re Miley (D. C.) 187 F. 177; Philadelphia Trust, etc., Co. v. Merchantville, 74 N. J. Eq. 330, 69 A. 729.

Did the bill with the affidavits filed entitle the plaintiff to the relief prayed for?

The court had the bill, answer, and affidavits before it. There was no statement of a fact that showed or indicated that the plaintiff had any property right in the corporate defendant or in the property in question, or that it had in any way contributed anything toward the organization of the defendant or its property. While the bill contains loose and general statements about express agreements, yet there is not a word to show that there was any written agreement. All the facts, and the entire course of conduct, showed that there was no agreement of any kind, oral or written, express or implied, that indicated that the plaintiff had any property right in the assets of the corporate defendant. In the order dismissing the bill, the learned district judge said:

"The court having examined the bill of complaint, answer and all other pleadings and affidavits filed herein, and heard the arguments of counsel thereon in open court, and having considered the same, and being satisfied that there was and is no agreement or trust, express or implied, whereby or whereunder the defendant, The Monmouth Pleasure Club Association, Inc., a corporation of the State of New Jersey, held legal title to certain lands and premises described in said bill of complaint for the benefit of the plaintiff and others who were the equitable owners thereof; and being further satisfied that there was and is no agreement or trust, express or implied, naked or resulting, whereunder the lands and premises described in the bill of complaint were or are owned by the plaintiff and others and not by the Monmouth Pleasure Club Association, Inc., a corporation, defendant, in which corporation's name the title is recorded, and further that the plaintiff on the pleadings and proofs is not entitled to the appointment of a receiver or any relief prayed for in its bill of complaint; * * * the same is hereby dismissed."

The property rights of the stockholders guaranteed to them under their charter and the laws of the state cannot be taken from them because of loose talk of irresponsible persons, and because, as the court said, "somebody somewhere said something to somebody" at some time. The facts before the court clearly showed that the declaration, whatever it was, of a trust was not in writing and is contrary to the Statute of Frauds in New Jersey (2 Comp. St. N. J. 1910, p. 2611, § 3), which provides:

"That all declarations and creations of trust or confidence of or in any lands, tenements or hereditaments, shall be manifested and proved by some writing, signed by the party, who is or shall be by law enabled to declare such trust, or by his or her last will in writing, or else they shall be utterly void and

of no effect; provided always, that where any conveyance hath been or shall be made of any lands, tenements or hereditaments, by which a trust or confidence shall or may arise or result by implication or construction of law, or be transferred or extinguished by act or operation of law, such trust or confidence shall be of the like force and effect, as the same would have been if this act had not been made." Douma v. Powers, 92 N. J. Eq. 25, 111 A. 401.

The late Mr. Justice Katzenbach, speaking for the Court of Errors and Appeals of New Jersey in the case of Loomis v. Public Service Transportation Co. et al., 140 A. 398, 400, admirably answers the contention of the plaintiff in the following language:

"The complainants allege that the said Berkeley Bus Company and Lafayette Realty Company were formed to be merely names or figureheads for the convenience of holding the title of the common property of the Hillside Bus Owners' Association. The complainants were instrumental in the formation of said corporations under our act of incorporation. While the certificates of incorporation, as has been stated, are not set forth in the record, yet we can gather from what is stated and what was done that the certificates stated purposes entirely different from those now alleged in this proceeding. The corporations ostensibly purchased property and issued shares of stock for it, which shares presumably passed into the hands of the members of the said association. Now, the complainants come forward and say that this was all a sham and fraud, and that the corporations which they were instrumental in forming never had anything but a naked title to the property which was conveyed to them, and that the property so conveyed belonged in equity to others. Equity will not countenance such a fraud upon the Corporation Act [2 Comp. St. N. J. 1910, p. 1592 et seq.] and extend to those who participated in the fraud its aid. Those who ask for relief in a court of equity must come into court with clean hands."

It must be evident that the mere provisions of the constitution and by-laws of the plaintiff corporation do not ipso facto confer upon it the legal or equitable right to deprive the defendant of its property, in violation of its charter rights, for it nowhere appears that the defendant corporation as such has expressly or impliedly consented to be deprived of its property in accordance with the contention of the plaintiff. Further the defendant has not mismanaged its property, nor is it insolvent.

The plaintiff has not established any ground upon which it is entitled to the relief for which it prayed, and the decree is affirmed.