## CLARKE v. GOLD DUST CORPORATION.
### No. 6233.

Circuit Court of Appeals, Third Circuit.
Aug. 10, 1939.

Rehearing Denied Oct. 3, 1939.

---

[1] No opinion for publication.

William C. Kronmeyer, of Union City, N. J. (Edward R. McGlynn, of Newark, N. J., of counsel; Albert Adams, of New York City, on the brief), for appellant.

George W. C. McCarter, of Newark, N. J., for appellee.

Before BIGGS, MARIS, and BIDDLE, Circuit Judges.

BIGGS, Circuit Judge.

The appellant filed a bill of complaint against the appellee in the court below praying the court to adjudge a consolidation or merger of American Linseed Company and Gold Dust Corporation to be illegal and void as to her, for an accounting and other relief. After the decision of various preliminary motions an amended bill of complaint was filed by the appellant upon March 12, 1936. Upon June 22, 1936, after answer, hearing was had at which various documentary exhibits relating to the status of the two companies were introduced in evidence and oral testimony was taken. The trial judge thereupon ordered the bill dismissed for want of equity. An appeal was taken to this court, and after argument, the cause was remanded to the court below with directions to make findings of fact and conclusions of law as required by Equity Rule 70½, 28 U.S.C.A. following section 723. Our opinion is reported in 3 Cir., 91 F.2d 12. Upon receipt of the mandate, the trial court held an additional hearing at which evidence bearing upon the question of jurisdiction was received. The trial judge made find-

ings of fact and conclusions of law and dismissed the bill again for want of equity. This is the decree appealed from.

The following facts appear. The appellant on September 1, 1925, became the owner of 100 shares of the 7% non-cumulative preferred stock of a par value of $100 a share of American Linseed Company, a corporation chartered under the laws of New Jersey on December 5, 1898. On November 28, 1928, the appellant became the owner of five additional shares of that preferred stock. [1]

The purpose of American Linseed Company, as expressed in its charter, at the time of its incorporation, was to deal in flaxseed and agricultural products and linseed oil. On January 9, 1912, however, the certificate of incorporation of the American Linseed Company was amended so as to include among the purposes of the corporation the manufacture and sale of vegetable and animal oils.

Upon November 19, 1928, the appellant and other stockholders of the corporation received notice from American Linseed Company to the effect that upon November 30, 1928, certain changes were to be made in the purposes of the corporation and that an amendment appropriate to such ends had been approved by the board of directors and would be submitted to the vote of the stockholders at a special meeting. The amendment proposed was for the purpose of giving to the corporation among other rights, the right to manufacture and sell any kind of merchandise or personal property, to deal in stocks and securities, to lend money with or without collateral and to assist financially any corporation in which the company was interested. At the special meeting of stockholders held upon November 30, 1928, 157,911 shares of preferred of 166,290 outstanding, and 159,085 shares of common out of 167,-500 outstanding were voted in favor of the amendment. The appellant voted against the amendment. The certificate of amendment was thereupon filed in accordance with law.

Concurrently, a consolidation or merger between American Linseed Company and Gold Dust Corporation (the predecessor corporation to the appellee) was proposed and was approved by the boards of direc-tors of each company. After notice to stockholders, the agreement of consolidation or merger was submitted to special meetings of stockholders. The stockholders' meeting of American Linseed Company was held December 20, 1928. All shares except those of the appellant were voted in favor of the merger. The appellant's shares were voted against the merger. The consolidation agreement was duly filed upon December 20, 1928.

By the terms of the agreement, Gold Dust Corporation, which we will refer to as the old corporation, was merged with American Linseed Company. American Linseed Company was the consolidated corporation. Its name, however, was changed to Gold Dust Corporation. In short, following the merger, American Linseed Company took the name "Gold Dust Corporation", to be distinguished from the old Gold Dust Corporation. The capitalization of the new Gold Dust Corporation, the appellee, consisted of 500,000 shares of preferred stock divided into initial issues of 6% and 7% preferred, and 3,000,000 shares of common stock. On August 23, 1929, a merger took place between the consolidated corporation and Standard Milling Company and the American Cotton Oil Company, whereby the former absorbed the latter and the consolidated company thus formed later amended its certificate of incorporation in respect to its capitalization.

Under the terms of the merger agreement between American Linseed Company and the old Gold Dust Corporation the holders of the 7% non-cumulative preferred stock of American Linseed Company were offered two alternatives. One alternative provided that each share of the 7% non-cumulative preferred stock of American Linseed Company should receive 2¾ shares of the common stock of the consolidated corporation. The other alternative provided that each such share should receive one share of the $7 cumulative preferred stock of the consolidated corporation, the appellee agreeing to pay in cash to each of the holders of preferred stock of the American Linseed Company a sum equal to the amounts of any deferred or unpaid dividends to which such stockholders might be held to be entitled upon

---

[1] The appellant was also the holder of other shares of the preferred stock of American Linseed Company from time to time. The facts relating to such other shares of stock are not pertinent here.

the final adjudication of such issue in a court of record.

The appellant did not exercise either option provided in the agreement nor did she seek appraisal of her stock pursuant to the provisions of Chapter 241 of the Laws of 1902 as amended by Chapter 142 of the Laws of 1920.[2]

The appellant contends that the consolidation or merger was void as to her and that she is still the owner of 105 shares of the preferred stock of the American Linseed Company; that American Linseed Company retained and still retains its corporate existence, and that she therefore is entitled to an accounting to determine what dividends or other moneys are due her by virtue of her ownership of the stock. The appellee, for its part, contends that the consolidation or merger of the two companies was in all respects in accordance with law, was fair and equitable to all the stockholders of American Linseed Company, but that if the appellant possessed any cause of action she has lost it by laches.

### The Law.

Section 27 of the New Jersey Corporation Act of 1896, Laws 1896, C. 185, p. 285, N.J.S.A. 14:11–1 to 14:11–3, provides that a corporation organized pursuant to its provisions may change the nature of its business or its name, increase or decrease its capital stock, by resolution of its board of directors and by the vote of two-thirds of each class of its stock.

Section 28 of the New Jersey Corporation Act of 1896, Laws 1896, C. 185, p. 286, as amended by the Laws of 1898, Laws 1898, C. 92, p. 149, N.J.S.A. 14:11–4, provides that any corporation may relinquish one or more branches of its business, "or extend its business to such branches as might have been inserted in its original certificate of incorporation". This section was in effect at the time of the organization of American Linseed Company.

The provisions as to merger in effect at the time of the organization of American Linseed Company, viz., Sections 104, 105, 106 and 107 of the New Jersey Corporation Act of 1896, Laws 1896, C. 185, pp. 309–311, N.J.S.A. 14:12–1 to 14:12–3, 14:12–5, need not be quoted here. It is clear that their provisions must be read into the charter of the company. See Meyerhoff v. Bankers' Securities, Inc., 105

N.J.Eq. 76, 85, 147 A. 105, 108; Colgate v. United States Leather Co., 75 N.J.Eq. 229, 239, 72 A. 126, 130, 19 Ann.Cas. 1262. It is obvious therefore that the directors and stockholders of American Linseed Company took the steps required by law in amending its certificate of incorporation. That amendment was binding upon the appellant unless it appears that the amendment was unfair and inequitable and worked injustice to the appellant. See Meredith v. New Jersey Zinc & Iron Co., 59 N.J. Eq. 257, 44 A. 55, affirmed by the Court of Errors and Appeals, 60 N.J.Eq. 445, 50 A. 1119.

The appellant takes the position that though a corporation may amend its certificate of incorporation to include other and different objects than those set forth in its original articles of incorporation, it may not amend its charter to merge or consolidate with another corporation with different purposes and objects. The appellant points out that Section 104 of the New Jersey Corporation Act of 1896 provides that corporations organized for the purpose "of carrying on any kind of business of the same or a similar nature, may merge or consolidate into a single corporation", and that the amendment to the charter of American Linseed Company was for the purpose of merger with old Gold Dust Corporation, and not being for the purpose of carrying on the business of the corporation, was a fraud upon the Corporation Act. In support of this contention the appellant cites American Malt Corp. v. Board of Pub. Utility Com'rs, 86 N.J.L. 668, 92 A. 362; Loomis v. Public Service Transportation Co., 102 N.J.Eq. 259, 140 A. 398; Colgate v. U. S. Leather Co., supra; Knights of the Ku Klux Klan v. Monmouth Pleasure Club, 3 Cir., 34 F.2d 730.

Of the cases cited by the appellant, only the Colgate case requires comment. In this case it was proposed that United States Leather Company and the Central Leather Company be merged and that the consolidated company by its charter should possess the same powers and objects as Central Leather Company. This was objected to by a stockholder who filed a bill to restrain the consummation of the merger. The bill was dismissed and the stockholder appealed. The Court of Errors and Appeals held that the merger would result in a diversion of the assets of the United

States Leather Company from the objects of its incorporation and therefore was in violation of the Act of March 8, 1893, Laws 1893, C. 67, p. 121. It will be observed that in the Colgate case there was no amendment of the charter of the United States Leather Company prior to the merger to the end that its objects should be similar to those set forth in the charter of Central Leather Company. The stockholders of United States Leather Company were compelled to vote upon a merger which in itself changed the ends and objects of the company in which they had invested their money. They were not afforded the opportunity to vote directly upon the question of amendment to the charter as in the case at bar. In the Colgate case the provisions of the New Jersey Corporation Act were evaded; in the case at bar, the requirements of the law were met. The appellant alleges that the amendment was a circumvention of the law. But there is no statutory prohibition which prevents amendment for the purpose of subsequent merger.

■ The appellant lays emphasis upon the fact that by the amendment the American Linseed Company acquired the right to loan to other corporations in which it might become interested and that Section 104 forbids a merger where one of the corporations intends to derive profit from the loan or use of money. The power to loan money, however, was clearly incidental to other powers conferred by the amendment. The prohibition of Section 104 applies specifically to the merger of insurance corporations, banking companies, and savings banks deriving profits from the loaning of money. Under the rule of ejusdem generis the phrase "or other corporation" employed in Section 104 must be restricted to corporations similar to those enumerated in the statute.

■ The appellant also contends that in order to ascertain the validity of the merger in the case at bar we may look only to the provisions of the merger statute as they existed at the time of the organization of American Linseed Company, viz., in 1898, and that the changes in the statute created by subsequent acts of the New Jersey Legislature, if held to be applicable, would deprive the appellant of contract rights in derogation of the provisions of Article I, Section 10(1) of the Constitution of the United States, U.S.C.A., and Article IV, Section VII(3) of the Constitution of New Jersey. This contention requires consideration only because no provision existed in 1898 for the issuance of no-par value stock. Provision for no-par value stock came into the law of New Jersey in 1920, Laws 1920, C. 168, p. 336, N.J.S.A. 14:8–1. Section 5 of the General Corporation Act of 1896, Laws 1896, C. 185, p. 279, N.J.S.A. 14:2–8, 14:2–9, however, provided that that Act might be amended or repealed at the pleasure of the Legislature and that every corporation created pursuant to its provisions should be bound by such amendments when made. We think that in view of the statute referred to no substantial question of constitutionality arises. See Grausman v. Porto Rican-American Tobacco Co., 95 N.J.Eq. 155, 121 A. 895.

If the appellant's proportionate share in the assets of the corporation remains the same, it is immaterial that the stock was changed from par to no-par.

■ In our opinion the provisions of the New Jersey Corporation Act in effect in 1928, the date of the merger, must govern it. The decision of the Court of Errors and Appeals in Bingham v. Savings Investment & Trust Company, 102 N.J.Eq. 302, 304, 140 A. 321, 322, disposes of the appellant's contentions. In the cited case $83\!\!/\!\!85$ of the stock in attendance at the special meeting of stockholders voted in favor of the merger. Chief Justice Gummere stated, 140 A. page 322: "In such a situation, as was stated by this court in Berger v. U. S. Steel Corp., 63 N.J.Eq. [809] 812, 53 A. 68, in considering a like contention made under similar conditions, it cannot reasonably be expected that the court is impressed with the belief that the complainants and their fellow stockholders will suffer any substantial injury by the consummation of the scheme, and that, unless it appears that the proposed action is without legal authority, this court should see to it that this overwhelming majority of shareholders are not deprived of their rights by the very few dissentients." In the case at bar only the stock of the appellant was voted against the amendment and the merger and the proportion of stockholders in favor of each was also overwhelming.

The trial judge found as a fact that the provisions of the consolidation agreement were fair and equitable to the plaintiff. He reiterated this statement in one of his conclusions of law.

The appellant has set forth upon her brief the rights which she has lost by the merger. These included the right to vote her stock. The preferred stock of the appellee may be voted only upon the failure of the appellee to pay dividends upon it for the period of a year. She also lost a right of pre-emption. Upon dissolution of American Linseed Company she was entitled to the par value of her shares. The preferred stock of the appellee is callable at $115 a share. As a stockholder of American Linseed Company the appellant possessed the right to accrued dividends. Upon the other hand, the preferred stock of the appellee is cumulative. If the appellant is compelled to accept the common stock of the appellee as provided for by the Fifth Article of the consolidation agreement, it is obvious that she gets nothing more than ordinary equity stock. The appellant, however, was not compelled to accept common stock in lieu of her preferred stock. She could have exercised the alternative option.

The appellant would have a greater security of dividends on the new preferred stock, for these accumulate whether earned or not. The new preferred stock is entitled to $100 on liquidation before any payment can be made to the common stock. The preferred stock of American Linseed Company was entitled to share pari passu with the common stock in the distribution of assets after each class of stock was paid par value. Upon the other hand there are greater assets behind the new preferred stock and a greater measure of security therein.

[7] At ██ and upon the appellant's brief it was alleged that for some years dividends were paid upon the common stock of American Linseed Company when the full 7% dividends were not paid upon the preferred stock held by 'the appellant. The only evidence relating to this subject before us is contained upon appellant's Exhibit J, a statement of dividends upon the preferred and common stock, from which it appears that on March 5, 1921, the usual dividend of 75¢ per share was paid upon the common stock, whereas the quarterly dividend of $1.75 per share was not paid in the fourth quarter upon the preferred stock in that year. In view of the fact that the appellant did not buy any stock until 1925, we cannot conclude that she was deprived of any substantial right in this connection.

██ ██ The fairness of a merger is largely a question of fact. Since capital structures and economic situations differ widely, the fairness of each case must be determined by its own circumstances. See Windhurst v. Central Leather Co., 101 N.J.Eq. 543, 550, 138 A. 772, 775. The decided cases are helpful only by way of analogy by showing what changes of rights may be required of stockholders under the law. Whether or not the appellant is entitled to the relief she seeks depends upon her rights under the New Jersey Law. Harr v. Pioneer Mechanical Corporation, 2 Cir., 65 F.2d 332, 334.

██ ██ For example, in the Windhurst case, the fairness of a merger between Central Leather Company and United States Leather Company, New Jersey corporations, was under consideration. The complaint of the stockholders was that they were being deprived of accumulated dividends amounting to $43 per share upon their stock and were being forced to receive in lieu class A and common stock. It was shown that dividends upon the new stock would yield 50¢ a year per share less than the preferred stock held by them. The Central Leather Company was in financial difficulties. The court held that the required conversion was not inequitable. The decision was approved by the Court of Errors and Appeals in Windhurst v. Central Leather Company, 107 N.J.Eq. 528, 153 A. 402. Cf. Copeland v. United Shoe Machinery Co., 84 N.J.Eq. 276, 94 A. 404, decided upon motion for preliminary injunction to restrain the merger. The law generally is that a stockholder is not entitled to relief unless such substantial changes be worked in the nature of his stock that actual injustice is visited upon him. In Delaware for example, the cancellation of dividends already accrued has been held to be grounds for enjoining a consolidation. Johnson v. Consolidated Film Ind., Del.Ch., 194 A. 844, affirmed by the Supreme Court of Delaware in 197 A. 489; Keller v. Wilson & Co., Inc., Del. Sup., 190 A. 115. The appellant's stock, however, carried no accrued dividends. In Grausman v. Porto Rican-American Tobacco Co., 95 N.J.Eq. 155, 121 A. 895, it was held that the amendment of a charter in order to provide for the issuance of no par value stock even prior to the enactment of a statute authorizing the issuance of such stock, did not impair the contract right of the stockholders. The right to

vote stock has been held to be a property right. Lord v. Equitable Life Assurance Society, 194 N.Y. 212, 87 N.E. 443, 22 L.R.A.,N.S., 420; Outwater v. Public Service Corp., 103 N.J.Eq. 461, 143 A. 729, 731, affirmed 104 N.J.Eq. 490, 146 A. 916. It was said in the Outwater case in respect to the stockholders' right to vote, "That right, however, has lost importance, for the complainants' companies are not going concerns, and never will be, in that respect having been absorbed, and the exchange for nonvoting preferred stock is harmless." This is true in the case at bar, for the appellant's stock is now sui generis and the effectiveness of her voting right has therefore been lost.

The right of preemption has been held to be a substantial right and the preferred stock of the consolidated company does not carry such a right with it. Section 124 of the General Corporation Act of New Jersey, Laws of 1926, c. 318, § 16, p. 544, N.J.S.A. 14:8–17, suppl. 1896, c. 185, effective at the time of the merger, provides that "unless otherwise expressly provided in the certificate of incorporation, or in by-laws adopted by two-thirds in interest of each class of stockholders, every stockholder shall have a right * * * to purchase his pro rata proportion of the stock to be issued according to the number of shares held by him * * *". In the case at bar an overwhelming majority of stock of all classes was voted in favor of the plan of merger, one provision of which was designed to do away with the right of preemption. Such action might perhaps be held to be the equivalent of a by-law to the same effect, but if this is not the case the appellant still retains the right of preemption upon her stock. How she can exercise that right as a practical matter is difficult to see, for as we have stated her stock is sui generis for the consolidation took place some months prior to the filing of her bill. In view of her failure to enjoin the merger, her preemptive right has ceased to have a practical value.

The appellant contends that her stock is perpetual and non-callable and that she therefore possessed a permanent investment. But Sections 27 and 28 of the Corporation Act of 1896, Laws 1896, C. 185, pp. 285, 286, provide for the decrease of the capital stock of a corporation created under the General Corporation Act by retiring or reducing classes of the stock. The appellant's stock did not possess the status which she attributes to it.

The test of whether or not a court of equity will grant relief as sought in the case at bar is the fairness of the plan to stockholders, but in balancing equities and conveniences, weight must be given to the fact that suit is brought by the holder of a very few shares of a large issue of stock. Windhurst v. Central Leather Co., supra. See Fletcher Cyclopedia Corporations, Revised and Permanent Edition, Sec. 7160.

All in all, we cannot say that the findings and conclusions of the trial judge upon the issue of the fairness of terms of the merger should be set aside as not being supported adequately by the evidence.

Moreover, we are of the opinion that the appellant has been guilty of laches. As we have stated, the consolidated corporation entered into a merger agreement with Standard Milling Company and The American Cotton Oil Company upon August 23, 1929. Upon September 4, 1930, this consolidated corporation amended its certificate of incorporation with respect to its capital stock. From the time the appellant voted against the merger at the stockholders' meeting of December 20, 1928, until she filed her bill of complaint upon December 12, 1930, a period of almost two years, the appellant did nothing. She did not even protest against the later mergers or at any time seek the aid of a court of equity to obtain injunctive relief. Dividend checks, based upon her right to the common stock of the appellee were sent to her. She received the benefit thereof, for they were paid into her account in the Guaranty Trust Company of New York. She may not now obtain the relief she seeks. See Beling v. American Tobacco Co., 72 N.J.Eq. 32, 65 A. 725; Dana v. American Tobacco Co., 72 N.J.Eq. 44, 65 A. 730; Windhurst v. Central Leather Co., 101 N.J.Eq. 543, 138 A. 772; Id., 105 N.J.Eq. 621, 149 A. 36, affirmed 107 N.J.Eq. 528, 153 A. 402; Lazear v. American Steel Foundries, 86 N.J.Eq. 21, 98 A. 642; Id., 86 N.J.Eq. 252, 98 A. 642, 100 A. 1030; Fraser v. Great Western Sugar Co., 185 A. 60, 14 N.J.Misc. 610, affirmed 120 N.J.Eq. 288, 185 A. 64.

The decree of the court below is affirmed.